IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES ex rel. FELIPE HERRERA (#K-57122), | )<br>)<br>) |
| Petitioner, | )<br>) Case No. 07 C 4194 |
| v. | )<br>) |
| NEDRA CHANDLER, Warden, Dixon Correctional Center, | )<br>)<br>) |
| Respondent. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is pro se Petitioner Felipe Herrera's petition for a writ of habeas corpus. *See* 28 U.S.C. § 2254(d)(1). For the following reasons, the Court denies Herrera's petition.

**BACKGROUND**

Herrera does not present clear and convincing evidence challenging the statement of facts as set forth in the Illinois Appellate Court's opinion affirming the judgment of the Circuit Court of Cook County, and thus the Court presumes those facts are correct for purposes of its habeas review. *See* 28 U.S.C. § 2254(e)(1); *see also Daniels v. Knight,* 476 F.3d 426, 434 (7th Cir. 2007). Therefore, the Court adopts the underlying facts as set forth by the Illinois Appellate Court, First Judicial District. *See People v. Herrera,* No. 1-97-3254 (Ill.App.Ct. 2004) (unpublished). The Court begins with a brief summary of the facts as determined by the Illinois Appellate Court on direct appeal. *See Easley v. Frey,* 433 F.3d 969, 970 (7th Cir. 2006).

**I.  Factual Background**

Herrera and his co-defendant, George Gipson, were involved in a gang-related drive-by

shooting on January 14, 1990.  Gipson pleaded guilty to first degree murder and the judge sentenced him to 20 years' imprisonment.  The State presented Gipson as an adverse witness at Herrera's bench trial.  At trial, however, Gipson maintained that he had no recollection of the shooting incident.  The State then introduced Gipson's court-reported statement for impeachment and cross-examination purposes.  Gipson's statement revealed that Herrera, Gipson, and another gang member drove with a gun to a rival gang's location because Herrera was angry that a rival gang member had damaged his car.  One shot was fired and Gipson stated that he could not remember if he fired the shot because he was intoxicated.

Other trial evidence reveals that Herrera was accompanied by two fellow gang members when he sought revenge on a rival gang whose member had thrown a brick through his car window.  Herrera and the other gang members drove to the rival gang's territory and fatally shot the victim, Pedro Caceres.  At trial, Herrera acknowledged that he was present at the crime scene.  In his sworn statement, Herrera acknowledged that he "decided to get a pistol and go back to the place where they busted my window."

## II.     Procedural Background

Following a bench trial in the Circuit Court of Cook County, the trial court convicted Herrera of first degree murder and sentenced him to 30 years' imprisonment. (Ex. A.)  The judgment of conviction was entered against Herrera on June 30, 1997. (Ex. C.)  Herrera filed a timely notice of appeal, but the Illinois Appellate Court dismissed his appeal on June 20, 2000, for want of prosecution. (Exs. A, B.)  On July 30, 2003, the Supreme Court of Illinois issued a supervisory order reinstating Herrera's direct appeal. (Ex. A.)

Counsel was appointed to represent Herrera for his reinstated appeal. (*Id*.)  Appointed

2

counsel filed a motion for leave to withdraw pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).  Herrera responded to counsel's *Anders* motion raising the following claims:  (1) the State failed to prove him guilty beyond a reasonable doubt; (2) trial counsel was ineffective for advising him to waive his right to a jury trial and for failing to pursue plea negotiations, file pretrial motions, impeach the State's witnesses, and argue Herrera's motion for a new trial; (3) appellate counsel was ineffective for moving to withdraw instead of arguing that the trial court erred when it admitted Herrera's co-defendant's statement into evidence; and (4) the trial court abused its discretion at sentencing.  (*Id.*)  On March 31, 2004, the Illinois Appellate Court granted appointed counsel's *Anders* motion for leave to withdraw and affirmed Herrera's conviction.  (*Id.*)

Thereafter, Herrera filed a petition for leave to appeal ("PLA") to the Supreme Court of Illinois.  (Ex. D.)  In his PLA, Herrera argued that (1) appointed appellate counsel's motion to withdraw failed to comply with certain procedural rules; (2) he was denied due process because he did not have the opportunity to file a pro se direct appeal or appellate counsel reappointed; (3) trial and appellate counsel were constitutionally ineffective; and (4) the State did not prove him guilty beyond a reasonable doubt.  (*Id.*)  On October 6, 2004, the Supreme Court of Illinois denied Herrera's PLA.  (Ex. E.)

On March 8, 2005, Herrera filed a pro se post-conviction petition in the Circuit Court of Cook County pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq.* (Ex. C, F.)  In his post-conviction petition, Herrera argued that:  (1) mandatory supervised release under Illinois law is unconstitutional, and thus that portion of his sentence must be vacated; (2) his conviction based on the theory of accountability was unconstitutional; and (3) he

3

was denied effective assistance of appellate counsel. (*Id*.) On April 29, 2005, the Circuit Court of Cook County dismissed Herrera's post-conviction petition. (Ex. G.) On appeal, Herrera, by counsel, filed a legal memorandum to the Illinois Appellate Court arguing that the trial court erred in summarily dismissing Herrera's post-conviction petition that alleged ineffective assistance of appellate counsel because counsel failed to challenge Herrera's conviction based on the theory of accountability. (Ex. G.) On September 27, 2006, the Illinois Appellate Court affirmed the trial court's dismissal of Herrera's post-conviction petition. (Ex. I.)

Herrera then filed a PLA to the Supreme Court of Illinois arguing: (1) that he had clearly stated a "gist" of a valid constitutional claim warranting further post-conviction proceedings based on his ineffective assistance of appellate counsel claim; and (2) his conviction for accountability was in error because there was no principal offender proven guilty beyond a reasonable doubt. (*Id.*) On January 24, 2007, the Supreme Court of Illinois denied Herrera's post-conviction PLA. (Ex. K.)

On July 25, 2007, Herrera filed the present petition for habeas relief pursuant to 28 U.S.C. § 2254(d)(1). Construing his pro se habeas petition liberally, *see Marshall v. Knight,* 445 F.3d 965, 969 (7th Cir. 2006), Herrera sets forth the following claims: (1) the State failed to prove him guilty beyond a reasonable doubt; (2) his trial counsel provided constitutionally ineffective assistance of counsel; (3) his appellate counsel provided constitutionally ineffective assistance of counsel; and (4) his sentence is unconstitutional. (R. 1-1.)

## LEGAL STANDARDS

### I. Habeas Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas

4

relief cannot be granted unless the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court. *Raygoza v. Hulick,* 474 F.3d 958, 963 (7th Cir. 2007); *see also Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Id.* at 405.

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *Id.* at 407. "This reasonableness determination is quite deferential, such that a state decision may stand as long as it is objectively reasonable, even if the reviewing court determines it to be substantively incorrect." *Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005); *see also Rompilla v. Beard,* 545 U.S. 374, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005) (state court decision must be objectively unreasonable). To be considered "unreasonable," a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *Gilbert v. Merchant,* 488 F.3d 780, 790 (7th Cir. 2007) (quoting *Hardaway v. Young,* 302 F.3d 757, 762 (7th Cir. 2002)). Put differently, to be reasonable, a state court decision must be minimally consistent with facts and circumstances of the case. *Dunlap v. Hepp,* 436 F.3d 739, 745 (7th Cir. 2006).

**II.     Procedural Default**

Before bringing a habeas claim in federal court, a petitioner must exhaust all remedies

available to him in state court. *Bintz v. Bertrand,* 403 F.3d 859, 863 (7th Cir. 2005). More specifically, the "petitioner must establish that he fully and fairly presented his claims to the state appellate courts, thus giving the state courts a meaningful opportunity to consider the substance of the claims that he later presents in his federal challenge." *Id.*; *see also O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). "Fair presentment in turn requires the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Simpson v. Battaglia,* 458 F.3d 585, 593 (7th Cir. 2006) (citation omitted). "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Lewis v. Sternes,* 390 F.3d 1019, 1026 (7th Cir. 2004).

A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice as a result of the alleged violation of federal law or by showing that the Court's failure to consider his claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 729, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The Supreme Court defines cause sufficient to excuse procedural default as "some objective factor external to the defense" which prevents a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). A fundamental miscarriage of justice occurs when a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496.

# ANALYSIS[1]

## I. Due Process Claim

In his first habeas claim, Herrera contends that the State did not prove his guilt beyond a reasonable doubt. The clearly established Supreme Court law that applies to Herrera's first habeas claim is set out in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Jackson* holds that due process is satisfied if – when viewing the evidence in the light most favorable to the prosecution – "***any*** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (emphasis in original). The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Courts defer to a fact finder's credibility determinations and will overturn verdicts only if "the record contains no evidence, regardless of how it is weighed, upon which a rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Cummings,* 395 F.3d 392, 397 (7th Cir. 2005) (citation omitted).

The Illinois Appellate Court discussed Herrera's sufficiency of the evidence claim as follows:

> Defendant argues that he was not proved guilty of murder beyond a reasonable
> doubt because the recovered gun did not match the bullet recovered from the

---

[1] Based on a Fifth Circuit case, Respondent argues that Herrera's habeas petition is time-barred because the Supreme Court of Illinois reinstated Herrera's appeal in July 2003 over three years after the Illinois Appellate Court dismissed his appeal for want of prosecution. *See Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003). Even if Respondent's argument were supported by controlling precedent, because the circumstances surrounding the reinstatement of Herrera's direct appeal are unclear from the record, the Court is unable to determine whether Herrera is entitled to either equitable or statutory tolling. *See Moore v. Battaglia,* 476 F.3d 504, 506 (7th Cir. 2007). Therefore, Respondent's argument is not persuasive.

> victim, that there was no gunshot residue test, and his fingerprints were not found on the recovered gun. Defendant also challenges the trial court's determination of the credibility of several witnesses, asserting that defendant and codefendant blamed one another, that codefendant did not remember seeing defendant, and that a detective did not remember interviewing a key witness. Consequently, defendant concludes that he was convicted for merely being at the crime scene. We disagree.
>
> The record establishes that defendant, accompanied by two fellow gang members, sought to exact revenge on a rival gang whose member had thrown a brick through his car window. They drove to the rival gang's territory, the victim was fatally shot. In his testimony, defendant acknowledged that he was present at the scene, and in his sworn statement, defendant acknowledged that he "decided to get a pistol and go back to the place where they busted my window."
>
> "[P]roof of the common purpose need not be supported by words of agreement or direct evidence, but can be drawn from the circumstances surrounding the commission of an act by a group." *People v. Williams,* 324 Ill. App. 3d 419, 434 (2001). Evidence that defendants voluntarily attached themselves to this group bent on illegal acts, with knowledge of its design, also supports an inference that they share the common purpose and will sustain their convictions for an offense committed by another. *Williams,* 324 Ill.App.3d at 434. Although the trial court did not decide who fired the fatal shot, it found that defendant was proved accountable for the murder beyond a reasonable doubt. Viewed in the light most favorable to the prosecution, we find that the evidence was sufficient to support that determination. *People v. Collins,* 106 Ill. 2d 237, 261 (1985).

(Ex. A, at 3-4.)

Although the Illinois Appellate Court relied on Illinois case law when deciding Herrera's due process claim, the Illinois court is not required to cite United States Supreme Court cases or even be aware of such law, as long as neither its reasoning nor the result of the state court decision contradicts clearly established Supreme Court precedent. *See Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (per curiam). Here, the Illinois Appellate Court relied on *People v. Collins,* 106 Ill.2d 237, 261, 87 Ill.Dec. 910, 478 N.E.2d 267 (Ill. 1985), which cites *Jackson* and follows its reasoning.

8

Thus, the Court turns to whether the Illinois Appellate Court reasonably applied the controlling law to the facts of this case. *See Williams,* 529 U.S. at 407. In making this reasonableness determination, the Court's review of the state court's decision is highly deferential. *See Barrow,* 398 F.3d at 602. Specifically, to be considered "unreasonable," a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *Gilbert*, 488 F.3d at 790. Put differently, to be reasonable, a state court decision must be minimally consistent with the facts and circumstances of the case. *See Dunlap,* 436 F.3d at 745.

Here, the Court would be hard-pressed to conclude that the Illinois Appellate Court's decision is unreasonable under this standard. Specifically, based on evidence presented at Herrera's bench trial, Herrera and two other gang members drove with a gun to a rival gang's location because Herrera was seeking revenge for his broken car window. At trial, Herrera admitted he was at the crime scene. In his sworn statement, Herrera also acknowledged that he "decided to get a pistol and go back to the place where they busted my window." After Herrera and the other gang members drove to the rival gang's territory, a shot was fired killing Pedro Caceres. Based on this trial evidence, the Illinois Appellate Court concluded that– viewing the evidence in a light most favorable to the prosecution – there was sufficient evidence proving that Herrera was accountable for Caceres' murder beyond a reasonable doubt. In sum, the Illinois Appellate Court's decision was not only consistent with the facts and circumstances of this case, it was not "well outside the boundaries of permissible differences of opinion." *See Gilbert*, 488 F.3d at 790. Thus, Herrera is not entitled to the relief he seeks based on his first habeas claim.

## II.     Ineffective Assistance of Counsel

In his next two habeas claims, Herrera contends that his trial and appellate counsel

9

provided constitutionally ineffective assistance of counsel. The clearly established Supreme Court law that applies to Herrera's ineffective assistance of counsel claims is set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish ineffective assistance of counsel, Herrera must show that (1) his attorney's performance "fell below an objective standard of reasonableness," *id.* at 688, and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Id.* at 694. If Herrera fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *See id.*

The proper standard for evaluating a habeas claim that appellate counsel was ineffective for not filing a merits brief is also pursuant to *Strickland*. *See Smith v. Robbins,* 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). Under this standard, Herrera "must first show that his counsel was objectively unreasonable, *see Strickland,* 466 U.S., at 687-691, 104 S.Ct. 2052, in failing to find arguable issues to appeal – that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Smith*, 528 U.S. at 285. If Herrera succeeds in this showing, he must demonstrate prejudice. *Id*. "That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." *Id.* at 285-86.

### A. Trial Counsel

Construing his habeas petition liberally, Herrera argues that his trial counsel was constitutionally ineffective because counsel failed to enforce a subpoena for a certain witness to testify at trial or to obtain an affidavit of this witness who would have exonerated Herrera. Herrera also contends that counsel was ineffective because he failed to challenge the State's

accountability theory at trial. The basis of Herrera's ineffective assistance of trial counsel claims in his habeas petition, however, vary from Herrera's basis for his ineffective assistance claims on direct appeal. On direct appeal, Herrera argued that his trial counsel was constitutionally ineffective for advising him to waive his right to a jury trial and for failing to pursue plea negotiations, file pretrial motions, impeach the State's witnesses, and argue Herrera's motion for a new trial. Thus, to the extent that Herrera raises federal claims for the first time in the present habeas petition, he has procedurally defaulted them. *See Coleman,* 501 U.S. at 750. Further, Herrera makes no arguments to overcome this default. *See id.*

For the sake of completeness, however, the Court reviews the Illinois Appellate Court's decision concerning the ineffective assistance claims Herrera brought on direct appeal and in his PLA to the Supreme Court of Illinois. In addressing Herrera's ineffective assistance arguments, the Illinois Appellate Court reasoned:

> Defendant next contends that he did not receive effective assistance of trial counsel because counsel failed to file pretrial motions, pursue plea negotiations, impeach the State's witnesses, or argue his motion for a new trial. Defendant further suggests that a jury trial would have been more fair and that he did not testify voluntarily.
>
> The record contains defendant's jury waiver which the trial court found was given "knowingly and intelligently." Defendant testified in his own defense that he was with codefendant in the car at the time of the shooting and that codefendant fired the weapon. Defendant has not presented any evidence to suggest that his jury waiver or his testimony was coerced.
>
> Furthermore, the failure to file motions to suppress does not establish ineffective assistance of counsel because such decisions are matters of professional judgment and appellate review of defendant's representation does not extend to matters involving the exercise of judgment or trial tactics. Here, counsel's trial strategy included casting doubt as to who fired the weapon and suggesting that defendant could not be accountable for murder where his only intent was to scare the rival gang member. Defendant has the burden of establishing counsel's actual incompetence as reflected in the representation and

11

> substantial prejudice resulting therefrom. In our judgment, defendant has failed to meet that burden in this case.

(Ex. A, at 4-5) (internal citations omitted).

Although the Illinois Appellate Court did not cite *Strickland*, as discussed above, the Illinois court need not cite United States Supreme Court case law or even be aware of such law, so long as neither its reasoning nor the result of its decision contradicts clearly established Supreme Court precedent. *See Early,* 537 U.S. at 8. Here, the Illinois Appellate Court's reasoning does not contradict *Strickland*. Specifically, the Illinois court concluded that trial counsel's failure to file certain motions was a matter of professional judgment and that counsel's trial strategy, which was also a matter of professional judgment, was reasonable. The Illinois Appellate Court further concluded that Herrera failed in his burden of establishing trial counsel's ineffective performance or that he was substantially prejudiced by counsel's performance.

Under the *Strickland* standard, a court's review of counsel's performance is highly deferential. *See Stevens v. McBride,* 489 F.3d 883, 890 (7th Cir. 2007). In addition, Herrera must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (citing *Strickland,* 466 U.S. at 689.) The Illinois Appellate Court concluded that Herrera failed in this burden. The Court agrees, and Herrera gives the Court no basis to conclude otherwise.

Moreover, the Illinois Appellate Court concluded that Herrera failed to establish that counsel's performance prejudiced him, namely, "but for counsel's unprofessional errors the result of the proceeding would have been different." *See Strickland,* 466 U.S. at 694. In the present habeas petition, Herrera makes no arguments concerning the *Strickland* prejudice prong. Without any argument addressing the prejudice prong, Herrera has failed to establish that the

12

Illinois Appellate Court unreasonably applied *Strickland* to the facts of his case or that the Illinois court's decision was "contrary to" *Strickland. See Woodford v. Visciotti,* 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam); *Harding v. Sternes,* 380 F.3d 1034, 1043 (7th Cir. 2004). Therefore, the Court denies Herrera's ineffective assistance of trial counsel claim.

### B. Appellate Counsel

#### 1. First Appellate Counsel Before Reinstatement

Next, Herrera brings an ineffective assistance of appellate counsel claim asserting that his first appellate attorney neglected his appeal. Because Herrera makes this argument for the first time in his habeas petition, it is procedurally defaulted. *See Coleman,* 501 U.S. at 750; *see also Jones v. Chrans,* 187 F.Supp.2d 993, 1001 (N.D. Ill. 2002) (habeas petitioner procedurally defaulted claims raised for first time in federal court). Herrera gives no explanation to overcome this procedural default, such as cause and actual prejudice. *See Coleman,* 501 U.S. at 750. Accordingly, the Court cannot review the merits of this procedurally defaulted claim on collateral review. *See Miranda v. Leibach,* 394 F.3d 984, 997 (7th Cir. 2005).

#### 2. Second Appellate Counsel After Appeal Reinstated

Herrera also argues that his second appellate counsel was ineffective for moving to withdraw under *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), instead of challenging his co-defendant's statement.[2] The Illinois Appellate Court rejected

---

[2] In his habeas petition, Herrera also argues that appellate counsel was ineffective for failing to comply with procedural rules when counsel filed his *Anders* brief. This claim is procedurally defaulted because Herrera only made this argument in his PLA to the Supreme Court of Illinois on direct appeal. *See Coleman*, 501 U.S. at 750. Herrera offers no explanation to overcome his procedural default, and thus the Court cannot consider the merits of this claim.

13

Herrera's argument on direct appeal:

> Finally, we reject defendant's argument that he is being denied effective assistance of appellate counsel where counsel has moved to withdraw instead of challenging the admission of codefendant's statement as hearsay and the trial court's sentencing decision. Evidentiary rulings are within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. We find the State's use of codefendant's court-reported statement was appropriate to impeach him and properly admitted as evidence. Thus, we agree with counsel that there was no meritorious issue to be raised on that basis.

(Ex. A, at 5-6.) (internal citations omitted).

Because the Illinois Appellate Court concluded that Herrera's underlying claim lacked merit, appellate counsel was not ineffective for failing to present this claim in a merits brief. Thus, Herrera failed to establish that counsel performed unreasonably by failing to discover nonfrivolous issues for appeal. *See Smith*, 528 U.S. at 285. In addition, Herrera has not established the *Strickland* prejudice prong, namely, that there is a reasonable probability that, but for his counsel's failure to file a merits brief, he would have prevailed on appeal. *See id.* at 285-86; *see also Lee v. Davis,* 328 F.3d 896, 901 (7th Cir. 2003). As such, the Illinois Appellate Court's decision is consistent with the facts and circumstances of the case and is not contrary to the *Strickland* standard. *See Dunlap,* 436 F.3d at 745.

Meanwhile, Herrera also argues in his habeas petition that appellate counsel was ineffective because counsel did not argue on appeal that the State failed to prove him guilty beyond a reasonable doubt on the State's theory of accountability. Herrera has not procedurally defaulted this claim because he raised it in his post-conviction petition, on post-conviction appeal, and in his post-conviction PLA. *See Boerckel,* 526 U.S. at 845, 848. In addressing this

---

*See id.; Miranda,* 394 F.3d at 997.

issue, the Illinois Appellate Court stated:

> Criminal defendants may be held accountable for a principal's crime where it is established that the principal and the accomplice shared a community of purpose or a common design. *People v. Coleman,* 222 Ill.App.3d 614, 623 (1991). The existence of a community of purpose or common design need not necessarily be established by words of agreement, but may be inferred from the group's behavior in committing the act. *Coleman,* 222 Ill. App. 3d at 623. Additionally, there is no legal requirement that a principal be convicted of an offense in order for another to be convicted of the same offense on an accountability theory. *See* 720 ILCS 5/5-2 (West 2004).
>
> Here, there was ample evidence adduced at trial to lead a reasonable finder of fact to conclude that defendant was guilty of murder on an accountability theory. Defendant clearly intended to return to the territory of the rival gang with his accomplices and a firearm to exact revenge on the members of the rival gang who shattered his window. Defendant admitted to being present at the scene of the victim's murder. Defendant also did nothing to interdict the shooting.
>
> In support of his argument, defendant cites *People v. Estrada*, 243 Ill.App. 3d 177 (1993), where the reviewing court overturned the defendant's conviction for murder on an accountability theory because there was no proof that the defendant participated in a common design to harm the victim. *Estrada,* 243 Ill. App. 3d at 184-85. In that case, after the defendant exited his car brandishing a tire iron, intending to intimidate rival gang members, unbeknownst to the defendant, two of his codefendants then opened fire upon the rival gang members from defendant's car, killing one victim. *Estrada,* 243 Ill.App.3d at 178-79. The reviewing court found that there was no evidence that the defendant exited the car as part of a common scheme with his two codefendants to harm the victim. *Estrada,* 243 Ill.App.3d at 185. Nor was there evidence that the defendant was aware that his codefendants intended to open fire. *Estrada,* 243 Ill.App.3d at 185. Unlike in *Estrada*, it could not have been a surprise to defendant that one of the occupants of his car would fire upon rival gang members (assuming that defendant was not the gunman), given the circumstances of their car trip.
>
> As stated, there is sufficient evidence to sustain defendant's conviction on an accountability theory. Defendant clearly said that after his window was broken, he became angry and intended to return to the scene with a weapon. The behavior of his codefendants suggests that they were aware of defendant's plans and participated willingly. Further, we emphasize that a defendant can be legally accountable for a crime other than the one planned. *See People v. Redmond*, 341 Ill.App.3d 498, 510 (2003). It was sufficient that the State proved that defendant intended to participate in a common scheme, the purpose of which was harming

> the victim.
>
> Because there was sufficient evidence for defendant to have been convicted under an accountability theory, we find that his appellate counsel's advocacy was not erroneous or deficient for failing to challenge the conviction on those grounds. *See People v. Simms,* 192 Ill. 2d 348, 362 (2000) (stating that a defendant is not prejudiced by his appellate counsel's failure to litigate a nonmeritorious issue on appeal). Because his appellate counsel's decision not to raise this issue on direct appeal did not constitute deficient advocacy, defendant has not stated the gist of a constitutional claim.

(Ex. I, at 5-8.)

The Illinois Appellate Court's decision is not contrary to the *Strickland* standard, as relied upon in *People v. Simms*, 192 Ill.2d 348, 362, 249 Ill.Dec. 654, 736 N.E.2d 1092 (Ill. 2000), which the Illinois court cites. Also, the Illinois Appellate Court's decision is a reasonable application of *Strickland* to the facts of this case. Specifically, the Illinois court concluded that appellate counsel's advocacy was not deficient for failing to challenge Herrera's conviction regarding the accountability theory because the theory – based on the facts of the case – lacked merit. *See Smith,* 528 U.S. at 285 (habeas petitioner must show "that counsel unreasonably failed to discover nonfrivolous issues" and file "a merits brief raising them." ); *see also Fuller v. United States,* 398 F.3d 644, 652 (7th Cir. 2005) ("Because a defendant's lawyer has an obligation to be truthful and forthright with the court, he has 'no duty to make a *frivolous* argument.'") (citation omitted) (emphasis in original). Therefore, Herrera's argument fails and the Court denies Herrera's request for habeas relief as to this claim.

## III. Constitutional Challenges to Sentence

In his last habeas claim, Herrera brings three constitutional challenges to his sentence, including: (1) the Illinois statute making mandatory supervised release part of every sentence fails to provide fair warning and is unconstitutionally vague; (2) extended-term sentences violate

16

the Due Process Clause and the Eighth Amendment; and (3) and Illinois' procedures for adjudicating parole violations violate "separation of powers."

Herrera did not raise these claims for a full round of review on direct appeal or on post-conviction review, and thus he has procedurally defaulted these claims. *See Simpson,* 458 F.3d at 593 (petitioner is required to assert his federal claim through one complete round of state-court review). Instead, he makes his argument concerning the Illinois' mandatory supervised release statute only in his post-conviction petition. On post-conviction appeal, Herrera did not make an argument concerning Illinois' mandatory supervised release statute. Instead, he argued that the trial court erred in summarily dismissing Herrera's post-conviction petition that alleged ineffective assistance of appellate counsel because counsel failed to challenge Herrera's conviction based on the theory of accountability. In addition, Herrera did not bring his extended-term sentence and parole violations claims until the present habeas petition. *See Jones v. Chrans,* 187 F.Supp.2d 993, 1001 (N.D. Ill. 2002) (habeas petitioner procedurally defaulted claims raised for first time in federal court). Therefore, Herrera's challenges to his sentence are procedurally defaulted.

Herrera has not overcome his procedural default by demonstrating cause for the default and actual prejudice as a result of the alleged violation of federal law or by showing that the Court's failure to consider his claim will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. Because Herrera has failed to overcome the procedural default, the Court is barred from reviewing the merits of this habeas claim on collateral review. *See Miranda,* 394 F.3d at 997.

## CONCLUSION

For these reasons, the Court denies Herrera's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1).

Dated: November 29, 2007

                                      **ENTERED**

                                      **AMY J. ST. EVE**
                                      **United States District Judge**